UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MYRON MASHONE LEWIS,

                Plaintiff,

                                                        Case No. 16-cv-378-pp

v.

GREGORY D. HOPPE, *et al.*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A AND REQUIRING PLAINTIFF TO FILE SECOND AMENDED COMPLAINT**

On May 24, 2016, this court entered an order granting plaintiff Myron Mashone Lewis's motion to proceed *in forma pauperis*, screening his *pro se* complaint and staying this case pending resolution of his state-court criminal case in Milwaukee County.[1] Dkt. No. 7. After the plaintiff was sentenced in the state case, the court entered an order clarifying that it would continue the stay of the federal case until the plaintiff "ha[d] litigated his claims to the highest state court." Dkt No. 12 at 2. Nearly two years later, the court learned that the plaintiff's appeal had been dismissed and ordered him to show cause why the court should not dismiss the case for failure to prosecute. Dkt. No. 17. The plaintiff moved to lift the stay, dkt. no. 18, the court discharged the show-cause order, granted the plaintiff's motion and ordered him to file an amended complaint by July 19, 2019, dkt no. 19. The plaintiff timely filed an

---

[1] The plaintiff was incarcerated at the Milwaukee County Jail when he filed his complaint. The Wisconsin Department of Corrections inmate locator web site indicates that since July 22, 2020, the plaintiff has been at Oshkosh Correctional Institution. https://appsdoc.wi.gov/lop/detail.do.

1

amended complaint, which the court screens in this order. Dkt. Nos. 20, 20-1, 20-2.[2]

## I. Federal Screening Standard

As the court noted in the initial screening order, under the Prison Litigation Reform Act, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

---

[2] Dkt. No. 20 is the court's complaint form, on which the plaintiff listed his name and one of the defendants and made his demand for relief. This document does not name all the defendants or state any facts. Dkt. No. 20-1 is a two-page, hand-written document titled "Statement of Claim (Amended Complaint)." This document lists various defendants and alleges facts. Dkt. No. 20-2 is an eight-page, hand-written document titled "Amended Complaint," which lists all the defendants and contains more detailed facts. It appears that the plaintiff copied the contents of a police report into Dkt. No. 20-2, then inserted editorial comments about portions with which he doesn't agree. The court does not know why the plaintiff filed the amended complaint in three, separate documents, but the court will treat all three as the amended complaint.

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

## II. The Plaintiff's Allegations

The plaintiff has sued several Greenfield Police Department employees: Detectives Gregory D. Hoppe, Douglas L. Tweedie, Chuck R. Fletcher and Jason Birschbach; Police Officer Aaron J. Busche; and Detective Sergeant Christopher D. DeGlopper. Dkt. No. 20-2 at 1. He also has sued Milwaukee Police Department Detective David Gabbard, Assistant District Attorneys Tyrone St. Junior and Franco Mineo and Milwaukee County Court Commissioner Barry Phillips. Id.

The plaintiff reiterates his allegations about the morning of July 27, 2015, saying that Greenfield and Milwaukee Police Officers illegally entered his apartment. Dkt. No. 20-2 at 2; see Dkt. No. 7 at 4. The plaintiff specifically names Defendants DeGlopper, Hoppe, Birschbach and Tweedie as the

3

Greenfield officers who were present and illegally entered the apartment. Dkt. No. 20-1 at 1. The plaintiff alleges that Hoppe led the officers to the entry of the plaintiff's apartment complex. Doc. 20-2 at 4. He says that Hoppe "overheard Milwaukee officers ordering subjects to open the door." Id. The plaintiff asserts that officers initially couldn't enter the apartment building because the common entry door was locked, and that while Milwaukee police officers ordered the subjects to open the door, they refused to comply. Id. A resident of another apartment opened the common entry door to the complex, through which the officers entered the building and entered the plaintiff's apartment—Apartment #1. Id. Other officers (the plaintiff does not specify who) were already inside the plaintiff's apartment and had taken the plaintiff and another suspect into custody. Id. The plaintiff was put in the back of an MPD vehicle. Id. The plaintiff contends that there was no warrant, probable cause, or exigent circumstances for the entry, which he asserts violated his rights under the Fourth Amendment. Dkt. No. 20-1 at 1.

The plaintiff also alleges that the plan to storm his residence began days earlier, on July 23, 2015, when Hoppe ordered Busche to begin tracking the plaintiff's cell phone. Dkt. No. 20-1 at 1–2. Busche allegedly contacted the "U.S. Cellular Law Enforcement support line" and set up a "continuous pinging" on the plaintiff's cell phone number. Id. at 2. The plaintiff alleges that Busche and Birschbach continued to track his cell phone without a warrant. Id.

The plaintiff further details each defendant's involvement in the July 27, 2015, entry of his home. Dkt. No. 20-2 at 2–8. The plaintiff alleges that in the afternoon on July 27, 2015 (several hours after the entry into his apartment), Hoppe returned to the plaintiff's residence with a signed search warrant. Id. at 2. Defendants Fletcher, Hoppe and Tweedie (and another detective who is

4

not named as a defendant) executed the search warrant on the apartment. Id. The plaintiff alleges that the officers were looking for "any type of written papers with phone numbers on them, or anything to do with Craig's list [], as well as a semiautomatic pistol." Id.

The plaintiff also alleges that Detective Fletcher had information that a stolen car related to the investigation was parked behind an apartment building connected to the plaintiff's building. Id. at 3. Fletcher allegedly took the car during a "follow up on this investigation" and photographed the exterior of the apartment buildings. Id. The plaintiff also alleges that Fletcher "was on the scene" during the entry into his home in the morning on July 25, 2015, and that he joined Hoppe and the other officers in executing the search warrant for the plaintiff's apartment that afternoon. Id.

The plaintiff alleges that Hoppe returned to the Greenfield Police Department after the entry and drafted an affidavit in support of a search warrant for the plaintiff's apartment and an application for a search warrant. Id. at 5. Hoppe then met with Assistant District Attorney St. Junior, who "reviewed the affidavit and proceeded to authorize it." Id. at 6. Assistant District Attorney Mineo "signed and notarized" the affidavit. Id. Milwaukee County Court Commissioner Phillips then reviewed the affidavit and application for a search warrant and authorized the search. Id. at 6.

The plaintiff alleges that DeGlopper "was also on the scene at [his] residence," was the first to enter his apartment and handcuffed him. Id. He alleges that Birschbach, in addition to tracking his cell phone, "was on the scene" on July 25, 2019, and entered his apartment with the other officers. Id. The plaintiff further alleges that Gabbard provided false information to Hoppe during the latter's investigation. Id. Gabbard allegedly told Hoppe that the

5

plaintiff had been arrested on June 1, 2015, for domestic battery. Id. at 6–7. He says that this information was used in the affidavit for the search warrant that Hoppe obtained after the entry had concluded. Id. at 7.

### III. Analysis

As noted previously, the plaintiff filed his initial complaint while his criminal case was pending. Dkt No. 7 at 5. His case now has concluded, and his appeal has been dismissed. Dkt. No. 17 at 2.

The Supreme Court has held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005); see also Heck v. Humphrey, 512 U.S. 477 (1994). The Seventh Circuit has held, however, that Heck's bar does not apply to "'a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.'" Mordi v. Zeigler, 870 F.3d 703, 707 (7th Cir. 2017) (quoting Muhammad v. Close, 540 U.S. 749, 751 (2004)). And when the prisoner has been convicted by guilty plea, rather than through a trial, "'the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.'" Id. (quoting Haring v. Prosise, 462 U.S. 306, 321, (1983)).

The plaintiff pleaded guilty to armed robbery and robbery with use of force.[3] See State of Wisconsin v. Myron Mashone Lewis, Milwaukee County

---

[3] The prosecution dismissed a second charge of armed robbery pursuant to the plaintiff's guilty plea.

6

Case Number 2015CF003427, available at https://wcca.wicourts.gov/. The plaintiff contests the conduct of state officials that led to his arrest, state-court criminal prosecution, conviction and sentence. But he challenges only the allegedly warrantless entry and after-the-fact authorization of a search warrant for his apartment. The court does not have enough information about the robbery case to know whether success on these Fourth Amendment claims would call into question the validity of his robbery convictions.

Even if the plaintiff's claims are not Heck-barred, however, the plaintiff has alleged no injury. In his "Statement of Claim" document, the plaintiff says, "I just want equal protection of the law and to get to express my issue that the Greenfield Police Department Detectives, other Greenfield police officers along with police officers from the Milwaukee 5th District violated my United States Constitutional 4th Amendment rights of security from unreasonable searches and seizures." Dkt. No. 20-1 at 2. Heck does not always bar a plaintiff's claim that officers conducted an unlawful search and seizure because the claim may not necessarily imply that the plaintiff's conviction was unlawful; however, "[i]n order to recover compensatory damages . . . the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury . . . which . . . does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." Heck, 512 U.S. at 487 n.7 (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986)).

The plaintiff asks for $15,000 for the alleged violation of his constitutional rights. Dkt. No. 20 at 20. Without any allegation of actual, compensable injury, the court cannot allow him to sue the law enforcement defendants for damages for violating his Fourth Amendment rights. The court

7

will give the plaintiff a last opportunity to amend his complaint to allege an actual, compensable injury that he suffered as a result of the allegedly unlawful search and seizure.

The plaintiff also makes claims against Assistant District Attorneys St. Junior and Mineo. He alleges that these defendants "reviewed" and "authorized" or "notarized" the search warrant application that Hoppe drafted after the entry had concluded and despite the application containing false information. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976). To determine whether the prosecutor is entitled to absolute immunity, courts apply a "functional approach," which "looks to 'the nature of the function performed, not the identity of the actor who performed it.'" Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)). For example, absolute immunity applies when a prosecutor "appears in court to present evidence in support of a search warrant application" but not when he "gives advice to police during a criminal investigation." Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009).

The prosecutors are not entitled to absolute immunity for their alleged actions. Because reviewing and approving a search warrant application is an investigative task, and not one in which the prosecutors were acting as officers of the court, absolute immunity does not apply. See Van de Kamp, 555 U.S. at 342. They may be shielded by qualified immunity, but it is not appropriate for the court to make that determination at the pleading stage. See Marten v. Swain, 601 F. App'x 446, 449 (7th Cir. 2015) (citing Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001)).

8

Case 2:16-cv-00378-PP   Filed 10/20/20   Page 8 of 11   Document 21

But reviewing an affidavit in support of a search warrant, notarizing the affidavit and authorizing a police officer to present that application to a judge does not state a claim under the Fourth Amendment. The only possible claim the court can imagine that would involve the prosecutors' review of the affidavit and approval of the application is what is sometimes referred to as a "malicious prosecution" claim, but really is a claim of wrongful arrest and detention in violation of the Fourth Amendment. Camm v. Faith, 937 F.3d 1096, 1105 (7th Cir. 2019). "When an arrest is judicially authorized . . . '[courts] presume the validity of [the] warrant and the information offered to support it.' *Whitlock v. Brown,* 596 F.3d 406, 410 (7th Cir. 2010)." Id. That presumption, however, may be rebutted "on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth[] made false statements to the judicial officer and that the false statements were necessary to the judicial officer's determination." Id.

The plaintiff has not alleged that St. Junior or Mineo knowingly or intentionally made false statements. Nor has he alleged that they had any reason to know that there was false information in the affidavit or in the warrant application. The court will dismiss St. Junior and Mineo as defendants.

Nor may the plaintiff proceed on his claim against Milwaukee Court Commissioner Phillips. The plaintiff alleges that Commissioner Phillips authorized the search warrant of the plaintiff's apartment after the entry had concluded. The decision whether to authorize a search warrant is an "integral judicial decision[] normally made by judges" and therefore protected by absolute judicial immunity. Dressler v. Doyle, No. 09-C-387, 2009 WL 10677613, at *5 (E.D. Wis. Sept. 4, 2009) (citing Forrester v. White, 484 U.S.

219, 226–27 (1988)). This immunity "extends to court commissioners as well as judges." Griffin v. Wisconsin, No. 08C0822, 2009 WL 2240232, at *2 (E.D. Wis. July 27, 2009) (citing Wis. Stat. § 757.68, Wis. S. Ct. R. 75.02, and Crenshaw v. Baynerd, 180 F.3d 866, 868 (7th Cir. 1999) (holding that quasi-judicial officers who "perform duties functionally comparable to those of a judicial officer" are immune from liability)). Commissioner Phillips's act of issuing a search warrant was "unquestionably a judicial act" protected under absolute judicial immunity, id. (quoting Burns, 500 U.S. at 492), even if he made an error in issuing the warrant (which the court has no reason to believe that he did), id. (citing Stump v. Sparkman, 435 U.S. 349, 363 n.12 (1978)).

The court has stated that it will allow the plaintiff a last chance to amend his complaint to state a claim against the law enforcement officers. The court is enclosing another blank complaint form for the plaintiff to use. He must write the words "Second Amended" at the top of the first page, next to the word "Complaint." He must write the case number for this case—16-cv-378—in the space provided. He must list every law enforcement officer that he wants to sue in the caption on page 1 of the complaint form. He must describe—on the lines provided on pages 2-3 of the complaint form—what each defendant did to violate his rights. The plaintiff does not need to copy the whole police report into the complaint. He needs only state what each of the defendants did to violate his rights, when they did it and where they did it. He must explain how he was injured by what the officers did—and it must be an injury other than the injury of being convicted. If the plaintiff needs more space that is provided on pages 2-3 of the complaint form, he may use an additional page or two of paper; he should write the words "Second Amended Complaint, Continued" at the top of each page, and number the pages. If the plaintiff files an amended

complaint by the deadline the court sets below, the court will screen it. If not, the court will dismiss the case on the next business day without further notice or hearing.

The court emphasizes that it is allowing the plaintiff one more chance to amend to state a claim only against the police officers. He has not stated a claim against the prosecutors or the court commissioner and the court is dismissing those defendants.

## IV. Conclusion

The court **ORDERS** that defendants Tyrone St. Junior, Franco Mineo and Barry Phillips are **DISMISSED**.

The court **ORDERS** that if the plaintiff wants to proceed with this case against the law enforcement officers, he must file a second amended complaint in time for the court to *receive* it by the end of the day on **November 20, 2020**. If the court does not receive the second amended complaint by the end of the day on November 20, 2020, the court will dismiss the case on the next business day for failure to state a claim.

Dated in Milwaukee, Wisconsin this 20th day of October, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

11

Case 2:16-cv-00378-PP   Filed 10/20/20   Page 11 of 11   Document 21